# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO.: 5:06CV2

| | |
|---|---|
| RICKIE WILKINSON, )<br>DAWN WILKINSON, )<br>RICKIE WILKINSON, )<br>d.b.a. RICKIE'S ONE STOP )<br>)<br>    **Plaintiffs,** )<br>)<br>    v. )<br>)<br>KENT HALLSTEN, AGENT, BUREAU )<br>OF ALCOHOL, TOBACCO )<br>AND FIREARMS, IN HIS OFFICIAL )<br>CAPACITY AND AS AN INDIVIDUAL, )<br>JOHN GOLDER, SUPERVISOR, )<br>BUREAU OF ALCOHOL, TOBACCO )<br>AND FIREARMS, IN HIS OFFICIAL )<br>CAPACITY AND AS AN INDIVIDUAL, )<br>ROBERT FROMME, DEPUTY )<br>SHERIFF, IREDELL COUNTY )<br>SHERIFF'S DEPARTMENT, IN HIS )<br>OFFICIAL CAPACITY AND AS AN )<br>INDIVIDUAL, AND )<br>JOHN DOE I-X, AGENTS OF THE )<br>BUREAU OF ALCOHOL, TOBACCO )<br>AND FIREARMS, IN THEIR OFFICIAL )<br>CAPACITY AND AS INDIVIDUALS )<br>)<br>)<br>    **Defendants.** )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on the following motions and memoranda: (1) Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment and "Memorandum in Support of The United States' and Federal Defendants' Motion To Dismiss or

1

in the Alternative, Motion for Summary Judgment," both filed March 24, 2006 (Documents ## 17, 18); (2) Plaintiffs' Response to Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment, filed April 20, 2006 (Document # 22); (3) Defendants' Reply to Response to Motion to Dismiss or in the Alternative, Motion for Summary Judgment, filed April 26, 2006 (Document # 23); (4) Plaintiffs' "Supplement to Plaintiffs [sic] Response," filed May 3, 2006[1] (Document # 24); and (5) Defendants' "Reply to the Supplement to Plaintiffs' Response," filed May 16, 2006 (Document # 27). These motions are now ripe for disposition by the Court.

## I. FACTUAL AND PROCEDURAL HISTORY

For the purposes of this Motion, the Court accepts the following facts derived from the Plaintiff's Complaint as true. *See Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 189 (4th Cir. 2002) (noting that "at the motion to dismiss stage, a court must accept the allegations of the complaint as true and view the complaint in the light most favorable to the plaintiff"); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) (stating that in considering a motion for summary judgment, the court must view the facts and inferences in the light most favorable to the party opposing the motion).

The Plaintiffs Rickie Wilkinson and Dawn Wilkinson (collectively "Plaintiffs") are residents and citizens of Iredell County. (Compl. ¶ 1). Rickie's One Stop #1 and Rickie's One Stop #2 are gasoline and convenience stores located in Iredell County and owned by Rickie Wilkinson. (*Id*. ¶¶ 2, 8). In or about July 1996, the Bureau of Alcohol Tobacco and Firearms ("ATF") began investigating Plaintiff Rickie Wilkinson ("Mr. Wilkinson") and his business,

---

[1] Despite the fact that Plaintiffs filed this supplement without leave of court, this Court will consider the supplement in ruling on Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment.

Rickie's One Stop, for trafficking contraband cigarettes in violation of 18 U.S.C. § 2342, money laundering in violation of 18 U.S.C. §§ 1956, 1957, and aiding and abetting, in violation of 18 U.S.C. § 2. (Defs.' Mem. In Supp., Exh. 4, pp 4, 27). The ATF investigation included electronically monitored and recorded undercover buys of large quantities of cigarettes, more than 3,815 cartons, between a confidential informant and Mr. Wilkinson. (*Id*. pp 6-12).

As a result of the ATF's investigation, on April 10, 1998, Special Agent Hallsten obtained search warrants, issued by Chief Magistrate Judge Carl Horn, for the Plaintiffs' residence and two business locations. (Defs.' Mem. in Supp., Exh. 5). At approximately six a.m. on April 15, 1998, Defendants Kent Hallsten, Robert Fromme, and various unnamed ATF agents (collectively "Defendants") conducted a search and seizure at the home of Mr. Wilkinson and his wife, Dawn Wilkinson ("Mrs. Wilkinson").[2] (Compl. ¶¶ 8, 16). During the search Mr. and Mrs. Wilkinson were asked to sit at their kitchen table. (*Id.* ¶ 18). At or about the same time, Defendants conducted a search and seizure at Rickie's One Stop #1 and Rickie's One Stop #2 where currency and cigarettes were seized. (*Id.* ¶¶ 8, 19). During the execution of these warrants, additional evidence was uncovered leading to the discovery of mini-storage buildings in Mr. Wilkinson's name. Consequently, Magistrate Judge Brent McKnight issued an additional search warrant on the afternoon of April 15, 1998, authorizing a search of the mini-storage buildings. (Def. Mem. In Supp. p 4). All search warrants and affidavits for search warrants were sealed when issued.[3] (Compl. ¶ 12). The Plaintiffs have not been charged with any criminal

---

[2] Plaintiffs contend that all named and unnamed Defendants, with the exception of ATF Supervisor John Golder, participated in the search and seizure. (Compl. ¶ 8).

[3] The initial search warrants issued on April 10, 1998, were unsealed by Order of the Court on March 8, 2006. The search warrant issued on April 15, 1998, was likewise unsealed January 5, 2005.

offenses. (*Id.* ¶ 13).

On April 22, 1998, the Plaintiffs submitted an emergency Writ of Mandamus and Prohibition to the United States Court of Appeals for the Fourth Circuit. (Def. Mem. in Supp., Exh. 6). Plaintiffs alleged an "unlawful and illegal search and seizure . . . without a bona fide warrant . . . without an attached Affidavit." (*Id.*). That writ named, among others, Chief Magistrate Judge Carl Horn and Chief Judge Richard L. Voorhees as defendants. (*Id.*). The Fourth Circuit denied Plaintiffs' Writ on July 21, 1998. (*Id.*, Exh. 7).

Plaintiffs filed this action on January 5, 2006, asserting: (a) Constitutional tort actions for violation of Plaintiffs' Fourth and Fifth Amendment rights by officers under color of federal law ("the Bivens action,")[4] and a violation of 42 U.S.C. § 1983; (b) a violation of 28 U.S.C. § 2465, for failure to return wrongfully seized property; and (c) various other torts under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et. seq*.

## II. STANDARD OF REVIEW

Defendants now move to dismiss or, in the alternative, move for summary judgment on Plaintiffs' claims, arguing: (1) Defendants in their official capacities are not liable for Constitutional violations; (2) Constitutional tort claims are barred by the statute of limitations; (3) Defendants are entitled to qualified immunity since no Constitutional violation has been alleged; (4) Plaintiffs have failed to state a claim pursuant to 42 U.S.C. § 1983; (5) Plaintiffs have failed to state a claim pursuant to 28 U.S.C. 2465; (6) Plaintiffs' claim is not cognizable under the Federal Tort Claims Act due to Plaintiffs' failure to exhaust administrative remedies;

---

[4]Despite federal legislation expressly creating a cause of action, suit may be brought for alleged violations of federal constitutional rights by federal agents. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

4

and (7) the Complaint should be dismissed for lack of personal jurisdiction over the individual Defendants and the United States.

A.      **Conversion of Motion to Dismiss to Motion for Summary Judgment**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that when, on a motion to dismiss for failure to state a claim upon which relief can be granted, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b).

This "reasonable opportunity" under Rule 56 requires "some indication by the court to all parties that it is treating the 12(b)(6) motion as a motion for summary judgment." *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974) (*quoting Dale v. Hahn*, 440 F.2d 633, 638 (2d Cir. 1971)); s*ee also Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979) (noting that "[s]uch notice must be reasonably calculated to inform the non-moving party of the conversion"). When, as is the situation at bar, parties submit and respond to motions whose very titles propose the treatment of a Rule 12(b)(6) motion to dismiss as one for summary judgment, nothing further is necessary to place the non-moving party on actual notice of an impending conversion. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir.1998) (stating that the court "does not have an obligation to notify parties of the obvious").

In the instant case, Defendants attach nine exhibits to their "Memorandum in Support of Motion to Dismiss or in the Alternative, Motion for Summary Judgment." These attached exhibits include the Affidavit for Search Warrant by Special Agent Hallsten and the three search

5

warrants issued by Magistrate Judge Carl Horn on April 10, 1998, all of which are referenced in the Plaintiffs' Complaint. (Compl. ¶¶ 9-12, 14, 27).

Likewise, in responding to the Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, Plaintiffs also present matters outside the pleadings. Specifically, Plaintiffs attach a sworn Affidavit by Rikie Wilkinson dated May 3, 2006, to their "Supplement to Plaintiffs' Response." Additionally, Plaintiffs "urge the Court to convert the Motion to Dismiss to a Motion for Summary Judgment . . . ." (Pls.' Resp. p. 8). The actions of both the Plaintiffs and Defendants, in the filing of their respective memorandums and attached exhibits, demonstrate actual notice that this matter may be disposed of as a Motion for Summary Judgment. *See Laughlin*, 149 F.3d at 261. Consequently, the Court will consider matters outside of the pleadings and dispose of this matter as a Motion for Summary Judgment. *See id.*; FED. R. CIV. P. 12(b).

**B.     Standard of Review for a Motion for Summary Judgment**

A party against whom a claim is asserted may, at any time, move for a summary judgment in that party's favor. FED R. CIV. P. 56(b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED R. CIV. P. 56(c). "This standard provides that the mere existance of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. 242 (emphasis original). Summary judgment requires the court to "perform a dual inquiry into the

genuiness and materiality of any purported factual issues." *Ross v. Commc'n Satellite Corp.*, 759 F.2d 355 (4th Cir. 1985). Further, when a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not simply rest upon the mere allegations or denials of the adverse party's pleading. FED R. CIV. P. 56(e). The non-moving party must set forth specific facts that demonstrate a genuine issue for trial, and failure to do so will result in summary judgment entered against that party. *Id.*; *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968) (noting that a plaintiff should not be permitted "to get to a jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial in the way of evidence to support those allegations").

### III. DISCUSSION OF CLAIMS

**A.     Constitutional Torts, the *Bivens* Action and 42 U.S.C. 1983**

   **1.     Sovereign Immunity**

Plaintiffs first assert a claim for violations of constitutional rights against all Defendants in their official capacities. (Compl. ¶¶ 3-6). Suit against a Federal officer in his official capacity is a suit directly against the United States of America. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The United States, as a sovereign, is immune from suit unless it consents to be sued. *F.D.I.C. v. Myer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Welch v. United States*, 409 F.3d 646, 650-651 (4th Cir. 2005). Although the United States has waived sovereign immunity for specific common law torts under the Federal Tort Claims Act, it has not waived its sovereign immunity for constitutional torts. *F.D.I.C*, 510 U.S. at 475; *Reinbold v. Evers*, 187 F.3d 348, 355 (4th Cir. 1999).

Plaintiffs here allege that Defendants, in their official capacities, violated Plaintiffs'

constitutional rights. However, since there is no waiver of sovereign immunity by the United States for such claims, the Court must grant summary judgment in favor of the Defendants on all constitutional claims brought against them in their official capacities.

2. **Qualified Immunity**

Plaintiffs also assert claims for violations of four distinct constitutional rights against all Defendants in their individual capacities.[5] (Compl. ¶¶ 3-7). Plaintiffs allege that: (a) Special Agent Hallsten made false and fraudulent statements in his affidavit for search warrant;[6] (b) the execution of the search warrant was unlawful; (c) the seizures made pursuant to the warrants were illegal; and (d) the Plaintiffs' Sixth Amendment rights were violated.

A review of Plaintiffs' allegations leads the Court to conclude that Defendants in their individual capacities are entitled to summary judgment on Plaintiffs' Constitutional claims on the basis of qualified immunity. An analysis of qualified immunity from suit for Constitutional torts under either *Bivens* or 42 U.S.C. § 1983 is precisely the same. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Butz v. Economou*, 436 U.S. 478 (1978) (stating that it would be "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials"). In sum, Government officials performing discretionary functions enjoy qualified

---

[5] Suits against "John Doe" defendants are not favored in the federal courts and are "appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the *plaintiff* is likely to be able to identify the defendant after further discovery." *Njoku v. Unknown Special Unit Staff*, 2000 U.S. App. Lexis 15695 (4th Cir. 2000) (emphasis added).

[6] Despite Plaintiffs' unsupported assertion that the search and seizure occurred prior to the issuance of these search warrants, the Court finds that the evidence in this case establishes that the warrants were obtained prior to the search and seizure. (Defs.' Mem. in Supp. Exh. 4). In fact, the Court takes judicial notice of the warrants issued April 10, 1998. FED. R. EVID. 201.

immunity from suit as long as their conduct does not violate any clearly established constitutional rights of which a reasonable person should have known. *Harlow*, 457 U.S. at 818. This qualified immunity provides an "*immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis original). Therefore the initial inquiry must be: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Further, "if the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail." *Parrish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004).

**a. False and fraudulent statements in affidavit for search warrant (Compl. ¶ 10).**

**i. Pleading requirements for fraud claim**

The Plaintiffs first contend that Special Agent Halsten provided "fraudulent information" in his affidavit for search warrant. (Compl. ¶¶ 10, 14). Notably, Plaintiffs do not specifically address what information within the affidavit was fraudulent. Such allegation is insufficient to allege a claim for fraud. *See* FED. R. CIV. P. 9(b) ("in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," including the 9(b) requirement "for greater particularity in all averments of fraud or mistake"). In fact, by making such unsubstantiated statements, Plaintiffs do nothing more than assert conclusory legal terms, which is insufficient to overcome a motion for summary judgment. *See Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (noting that conclusory legal terms do not insulate a complaint from

9

dismissal when the facts alleged do not support the legal conclusion).

### ii. The *Franks* requirements

However, construing the facts in the light most favorable to the non-movants, even if Plaintiffs' vague assertion of fraud met the requirement of particularity outlined in Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiffs failed to present the necessary evidence to overcome the presumed validity of the search warrant in question. *Franks v. Delaware*, 438 U.S. 154 (1978) (stating that an attack of a search warrant's validity must be "more than conclusory"). In a criminal case, to plead a Fourth Amendment violation in a search warrant the Supreme Court mandated the satisfaction of a two-part test. *Franks*, 438 U.S. at 171. Likewise, a plaintiff must satisfy the same, well-established criteria in a civil claim for damages resulting from a violation of the Fourth Amendment based on false or fraudulent statements in an affidavit for search warrant. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (to establish a violation of a constitutional right a "plaintiff that challenges the validity of a search warrant . . . must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware*"); *see also Bailey v. Town of Smithfield*, 19 F.3d 10, 1994 WL 67656 (4th Cir. 1994) (unpublished) (to seek civil recovery for a Fourth Amendment violation a plaintiff must "meet the prerequisites for neutralizing the presumption of validity" under *Franks*).

*Franks* requires two showings. First a plaintiff must show, by a preponderance of the evidence, "that a false statement knowingly and intentionally, or with reckless disregard for the truth was included in the warrant affidavit." *Franks*, 438 U.S. at 155. Second, a plaintiff must demonstrate that the specific false information was necessary to the finding of probable cause. *Id.* at 156.

This first showing under *Franks* is necessary to overcome the presumed validity of the search warrant and the affidavit in support of the search warrant.

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. . . . There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. *They should point out specifically the portion of the warrant affidavit that is claimed to be false*; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Frank*s, 438 U.S. at 171 (emphasis added).

The second showing requires a plaintiff to prove that those specific false and fraudulent statements were material to a finding of probable cause. "It is well established that a false or misleading statement in a warrant affidavit does not constitute a Fourth Amendment violation unless the statement is 'necessary to the finding of probable cause.'" *Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994) (citing *Franks v. Delaware*). This requirement can only be met if "when material that is the subject of the alleged falsity or reckless disregard is set to one side" no sufficient content remains for a finding of probable cause. *Id*. at 172. At the very least a plaintiff must "plead enough for a necessary inference to be reasonably drawn." *Tores-Viera v. Laboy-Alvarado*, 311 F.3d 105, 108 (1st Cir. 2002).

Here, Plaintiffs fail to meet either prong of the *Franks* test. First, Plaintiffs merely allege that "the affidavit for search warrant was based upon false and fraudulent information." (Compl. ¶ 10). However, Plaintiffs do not point the Court to the specific statements that they allege are false or fraudulent. Although the Plaintiffs alleged that they "became aware" of these false and

11

fraudulent statements when the Court ordered the affidavit unsealed, the Court finds its notable that Plaintiffs have still failed to demonstrate where those statements are located in the twenty-nine page affidavit. In addition to failing to specifically point to the false or fraudulent information included in the affidavit, the Plaintiffs completely neglect to address how such false and fraudulent statements were material to a finding of probable cause. In fact, even assuming as true that the affidavit contains false and fraudulent information, the Court still concludes that Plaintiffs have failed to meet the two-pronged test because Plaintiffs do not allege that such statements were necessary to the finding of probable cause. *See Franks*, 438 U.S. at 156.

In sum, Plaintiffs do not plead sufficient facts for the Court to infer constitutional violations resulting from the alleged "fraudulent information" contained in Special Agent Halsten's affidavit. Without a constitutional violation there can be no constitutional tort. Without a constitutional tort there need be no further inquiry into the Defendants' qualified immunity. *Saucier*, 533 U.S. at 201. Therefore, Plaintiffs' claim of a fraudulently created affidavit as a basis for their Fourth Amendment claim is meritless.

**b. Unlawful execution of the search warrant (Compl. ¶ 18).**

Plaintiffs additionally allege that Defendants violated Plaintiffs' Fourth Amendment rights when they "opened the door," "began to ransack the house," and required Plaintiffs to "sit at the kitchen table and refused to let them move." (Compl. ¶¶ 17-18). Such allegations are insufficient to maintain a Fourth Amendment violation.

First, Plaintiffs fail to allege any property damage in the course of the search and thus there is no cognizable constitutional violation. In fact, even if they had alleged property damage, it might not rise to a constitutional violation. *See Dalia v. United States*, 441 U.S. 238, 258

(1979) ("officers executing search warrants on occasion must damage property in order to perform their duty").

Moreover, Plaintiffs' claim that being forced to sit at their kitchen table violated their Fourth Amendment rights does not rise to the level of a constitutional violation. The Supreme Court has made clear that some detention is necessary for the "orderly completion of the search." *United States v. Place*, 462 U.S. 696, 704 (1983) (*quoting Mich. v. Summers*, 452 U.S. 692, 703 (1981)). Several factors justify detention of an occupant during the execution of a search warrant. In addition to ensuring safety of the officers conducting the search, the Supreme Court has pointed out that the importance of "preventing flight in the event that incriminating evidence if found" also justifies detention. *Summers*, 452 U.S. at 702. Requiring the Plaintiffs to sit at their kitchen table during the course of the search was not a constitutional violation.

### c. Seizures were illegal (Compl. ¶¶ 13, 15).

The Plaintiffs next claim that the seizure of property from their home and businesses violated their Fifth Amendment due process rights. (Compl. ¶ 19). However, the Supreme Court has addressed this precise issue stating that "[t]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or *property* in criminal cases." *Taylor v. Waters*, 81 F.3d 429, 436 (4th Cir. 1996) (*quoting Gerstein v. Pugh*, 420 U.S. 103, 142-46 (1979)) (emphasis added). The Fourth Amendment is the Plaintiffs' shield from violations of due process in the setting of a criminal seizure. As discussed above, no Fourth Amendment violations occurred in the issuance or execution of this warrant for search and seizure, and as such no Fifth Amendment due process violations may be asserted.

### d. Sixth Amendment constitutional violations (Compl. ¶ 7).

Plaintiffs claim a violation of the Sixth Amendment only once in their Complaint, and do so only as a part of their short and plain statement of the grounds upon which the Court's jurisdiction depends. (Compl. ¶ 7) (stating "[j]urisdiction in this matter is based on . . . violations of the Fourth, Fifth and Sixth Amendments of the United States Constitution"). Such allegation fails to meet even the liberal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. All that is required in a pleading is "that a plaintiff set forth facts sufficient to allege each element of his claim." *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005) (*quoting Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002)); *see also* A.J. Stephani, FEDERAL CIVIL PROCEDURE LITIGATION MANUAL § 8.1 (Matthew Bender & Co., Inc. 2006) (2002) (claims must "be supported by some kind of factual basis; mere legal conclusions are not sufficient").

Additionally, the Sixth Amendment provides that:

> [i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const. Amend. VI. Plaintiffs here admit that they were never prosecuted criminally. (Compl. ¶ 13). Without a showing of any facts that would support a violation of their Sixth Amendment rights, Plaintiffs may not successfully assert this claim.

In summary, Plaintiffs have failed to assert claims for constitutional violations against the

Defendants in their individual capacities. Without a constitutional violation, Defendants are entitled to qualified immunity. Therefore, the Court grants summary judgment in favor of all Defendants in their individual capacity on all of Plaintiffs' constitutional claims.[7]

**B.      28 U.S.C. 2465**

Plaintiffs next assert a claim for relief under 28 U.S.C. § 2465, contending that Defendants have failed to return "illegally seized property." (Compl. ¶ 22-24) Section 2465 provides that:

> (a) Upon the entry of a judgment for the claimant in any proceeding to condemn or forfeit property seized or arrested under any provision of Federal law–
>
> > (1) such property shall be returned forthwith to the claimant or his agent; and
> > (2) if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and, in such case, neither the person who made the seizure or arrest nor the prosecutor, shall be liable to suit or judgment on account of such suit or prosecution, nor shall the claimant be entitled to costs, except as provided in subsection(b).

28 U.S.C. § 2465(a) (2006). Plaintiffs have made no showing that a forfeiture proceeding has been initiated by the United States, much less that the Plaintiffs have an entry of judgment in their favor in such a proceeding. Additionally, the plain language of the statute makes clear that

---

[7] Although Plaintiffs name Robert Fromme, Deputy Sheriff, Iredell County Sheriff's Department ("Fromme"), as a defendant in this lawsuit, Fromme was acting under the color of federal law at the time of the events at issue here. *See Jarno v. Lewis*, 256 F. Supp. 2d 499, 503 (E. D. Va. 2003) (stating "whether an official acts under color of state or federal law largely depends upon the authority under which the action that causes the constitutional harm is taken) (*citing Rosas v. Brock*, 826 F.2d 1004, 1007 (11th Cir. 1987); *Johnson v. Orr*, 780 F.2d 386, 390 (3rd Cir. 1986); *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976)). Specifically, the search and seizure were pursuant to federal search warrants secured by an ATF officer in the course of a federal investigation and Fromme was a Special Deputy United States Marshal. (Defs.' Mem. in Supp. p. 26). Therefore, since Fromme was acting under federal law, he is entitled to summary judgment on the same basis as the other Federal Defendants.

the officers making seizures are not personally liable.[8] Therefore, this Court grants summary judgment in favor of the Defendants on Plaintiffs' Section 2465 claim.

**C.     28 U.S.C. 2671 et seq. Federal Tort Claims Act**

Plaintiffs state a cause of action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et. seq*. (Compl. ¶ 26). However, "an action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675 (2006). Not only did Plaintiffs fail to file a claim with the proper administrative agency as required by the FTCA, but Plaintiffs concede that this claim should be dismissed. (Pls'. Resp. p. 4). Therefore, the Court grants summary judgment in favor of the Defendants as to this cause of action as well.

## IV CONCLUSION

**IT IS THEREFORE ORDERED** that the Defendants' Motion for Summary Judgment is hereby **GRANTED** on all claims and as to all Defendants.

Signed: August 2, 2006

Richard L. Voorhees
United States District Judge

---

[8]The Court reminds Plaintiffs' Counsel of the obligation that, by signing any document submitted to this Court, he represents that "legal contentions therein are warranted by existing law." FED. R. CIV. P. 11(b)(2).